IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-00956-RPM

E. DEAN JAGERS,
TOM JACOBS,
STANLEY KRIEGER,
MATT ROSENGRANTS,
SAND ARROYO RANCH, INC.,
GELNN R. AUSMUS, and
RUSSELL L. AUSMUS,

       Plaintiffs,

v.

FEDERAL CROP INSURANCE CORPORATION,

       Defendant.

---

## ORDER ON PLAINTIFFS' FEE APPLICATION UNDER THE EQUAL ACCESS TO JUSTICE ACT

---

In this action for judicial review under the Administrative Procedure Act ("APA"),

5 U.S.C. § § 701-06, seven plaintiffs challenged determinations of the Federal Crop Insurance

Corporation ("FCIC") denying coverage under the plaintiffs' federal crop insurance policies. The

challenged agency actions were based on determinations that the plaintiffs had failed to follow

good farming practices when they planted non-irrigated corn crops in Baca County, Colorado

during the 2008 growing season.  The seven plaintiffs fell into two groups:  (1) producers who

planted non-irrigated corn on newly broken land (E. Dean Jagers, Tom Jacobs; Stanley Krieger,

Matt Rosengrants, and Sand Arroyo Ranch, Inc., collectively, "the Newly Broken Land

-1-

Plaintiffs"), and (2) producers who did not apply fertilizer to their corn crops at the time of planting (Glenn Ausmus and Russell Ausmus, collectively, "the Fertilizer Plaintiffs").

This action was initiated on April 27, 2010, by Newly Broken Land Plaintiffs. The Fertilizer Plaintiffs – Glen and Russell Ausmus – joined the action when the second amended complaint was filed on June 24, 2010.

In a Memorandum Opinion and Order dated July 6, 2012, the Court vacated the defendant's denials of federal crop insurance coverage as to the Fertilizer Plaintiffs and affirmed the defendant's denials of federal crop insurance coverage as to the Newly Broken Land Plaintiffs.

On August 6, 2012, plaintiffs Glen Ausmus and Russell Ausmus filed an Application for Fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, seeking attorney's fees and costs in the amount of $49,082.25. The defendant opposed the fee application.

Subsection (d)(1)(A), 28 U.S.C. § 2412 provides:

(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

A party seeking an award of fees and other expenses must "submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party

stating the actual time expended and the rate at which fees and other expenses were computed."

28 U.S.C. § 2412(d)(1)(B). For purposes of subsection (d), "party" – with respect to an

individual – is defined as "an individual whose net worth did not exceed $2,000,000 at the time

the civil action was filed ... ." 28 U.S.C. § 2412(d)(2)(B).

With their fee application, the plaintiffs submitted two exhibits:

(1)     Exhibit 1, labeled "Net Worth Exhibit."  The plaintiffs' Net Worth Exhibit

consists of a half-page declaration of Russell Ausmus and a half-page declaration of Glen

Ausmus, each stating that on June 24, 2010, the declarant's net worth was less than $2,000,000;

and

(2) Exhibit 2, a declaration of Jeff Todd, the Plaintiff's lead counsel, with website

information about Mr. Todd's law firm, McAfee & Taft (Exhibit 2-A) and attached billing

statements (Exhibit 2-B).  Mr. Todd's declaration explains how the plaintiffs' fee request was

calculated.

The defendant argues that the plaintiffs' net worth declarations are not sufficient to

establish their eligibility for fees under the EAJA.

A party seeking to recovery litigation expenses under the EAJA bears the burden of

establishing that at the time the civil action was filed the applicant's net worth did not exceed the

Act's net worth limitations.  *Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1177

(10th Cir. 2000); *see also Pate v. United States*, 982 F.2d 457, 459 (10th Cir. 1993) (discussing

26 U.S.C. § 7430, which incorporates EAJA requirements). A conclusory affidavit without

supporting evidence is inadequate to establish eligibility under the EAJA. *Fields v. United

States*, 29 Fed. Cl. 376, 382 (1993), *aff'd* 64 F.3d 676 (Fed. Cir. 1995); *see also Shooting Star*

-3-

*Ranch*, 230 F.3d at 1178 (holding that an unsworn, unverified letter from the plaintiff's certified public accountant stating that plaintiff's net worth was between $1,500,000 and $1,800,000 was not sufficient to establish that the plaintiff qualified as a "party" under the EAJA). An applicant requesting fees under the EAJA "must present sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Fields*, 29 Fed. Cl. at 382; *but see United States v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990) (observing that standard of proof is not articulated in the statute and "some informality of proof is appropriate").

The plaintiffs' statements of their net worth are not supported by any details or supporting documentation. The plaintiffs did not list specific assets or liabilities and did not provide tax returns or appraisals or other information from which the court could verify the plaintiffs' assets and liabilities.

The plaintiffs' reply brief states, "... to the extent that this Court questions the veracity of their sworn affidavits, the Ausmuses will gladly submit any additional financial documents to satisfy such doubt. (Pls.' reply at 2-3).

To avoid prolonging this litigation and upon the assumption that plaintiffs will be able to demonstrate their eligibility by showing net worth not exceeding $2,000,000 by submitting a declaration of a qualified accountant who has examined the financial records, or an audited financial statement, the other issues raised by the defendant are addressed in this order.

The defendant argues that its position was substantially justified.

The Government's position is substantially justified under EAJA if it is "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  To meet the test of reasonableness, the

Government must show "a reasonable basis for the facts asserted; a reasonable basis in law for the legal theory proposed; and support for the legal theory by the facts alleged." *Harris v. R.R. Retirement Bd.*, 990 F.2d 519, 520-21 (10th Cir. 1993)(citing *Gatson v. Bowen*, 854 F.2d 379, 380 (10th Cir. 1988)).

The disputes in this action involved interpretation and application of the good farming practices ("GFP") exclusion, one of the Basic Provisions of the plaintiffs' Group Risk Income Protection ("GRIP") policies.  There were no factual disputes about the Fertilizer Plaintiffs' farming practices.  During the 2008 growing season in Baca County, Colorado, the Ausmuses did not conduct soil tests before they planted their non-irrigated corn crop, and they did not apply fertilizer at the time of planting because their usual practice was to apply fertilizer to a growing crop as side-dressing. After the crop was planted, the Ausmuses did not apply fertilizer due to the extremely dry conditions.  The Risk Management Agency ("RMA") determined that they had failed to follow good farming practices by not applying the minimum amount of fertilizer necessary to allow the crop to make normal progress to maturity.  The agency interpreted "good farming practices" to require soil testing before planting and the application of fertilizer at the time of planting.

The defendant asserts that the RMA's GFP determinations were based on full consideration of the GRIP Basic Provisions, applicable regulations and published materials, including materials gathered by the approved insurance provider. The defendant states, "The fact that drought conditions destroyed the crop after planting does not negate that it is a good farming practice to apply fertilizer at the time of planting." (Def.'s resp. at 9).

Contrary to the defendant's arguments, it has not carried the burden of showing its position was substantially justified. As set forth in the Memorandum Opinion and Order, the RMA's determinations were based on publications that did not support the agency's determinations and the RMA failed to give weight to the opinion of Kevin Larson, an expert who stated that the Ausmuses' farming practices were appropriate for the dry conditions of the 2008 season. The defendant's response to the plaintiffs' fee application offers no explanation of why the RMA refused to consider whether the application of fertilizer by side-dressing is a good farming practice and, if so, how that practice was impacted by the dry conditions that prevailed in Baca County in 2008.

The Ausmuses seek $49,082.25 in attorney fees, calculated as follows:

| Name/position | Hours | Hourly Rate | Total |
|---|---|---|---|
| Jeff Todd (Lead Counsel) | 119.2 hours | $245/hr. | $29,204 |
| Jeremiah Buettner (Associate) | 268.4 hours | $175/hr. | $46,970 |
| David Seserman (Local Counsel) | 41 hours | $350/hr. | $14,350 |
| Ginger Schones (Legal Assistant) | 84.3 hours | $90/hr. | $ 7,587 |
| Lynn Havrilla (Legal Assistant) | .2 hours | $80/hr | $    16.00 |
| Tanya Schmidt (Legal Assistant) | .5 hours | $75/hr. | $    37.50 |
|  |  | Total: | $98,164.50 |

To account for the fact that the work was performed for both the Fertilizer Plaintiffs and the Newly Broken Land Plaintiffs, the total ($98,164.50) was reduced by 50%, resulting in a request for $49,082.25. ( Pls.' Ex. 2, Declaration of Jeff Todd). No time entries were included for work that was done before the Ausmuses joined the action. (Pls.' reply at 4; Pls.' Ex. 2-B).

The defendant argues that 50% is an unreasonable allocation because there were five Newly Broken Land Plaintiffs and only two Fertilizer Plaintiffs, and the parties' briefs devoted more attention to issues unique to the Newly Broken Land Plaintiffs.

The defendant's argument is not persuasive.  There were overlapping issues and the action was litigated more efficiently by combining the two groups. The 50% allocation is reasonable.

The defendant argues that the requested fees are excessive because the plaintiffs calculated the fees using hourly rates that exceed the statutory limit.

The EAJA provides, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

The plaintiffs state that a cost of living adjustment (COLA) results in an hourly rate of $184.23. (Pls.' mot. at 5, n.1). The Defendant's response does not dispute the plaintiffs' COLA adjustment. Thus, it may be assumed that $184.23 is an appropriate hourly rate under the EAJA.

The plaintiffs calculated their fee request using an hourly rate of $350 for Mr. Seserman; $245 for Mr. Todd, and $175 for Mr. Buettner.

Mr. Buettner's hourly rate of $175 is appropriate.

The Plaintiffs have not provided any factual basis for a rate enhancement for Mr. Seserman's hours. The hourly rate of $184.23 is the appropriate rate for his time.

The plaintiffs assert that for Mr. Todd's hours, a market rate of $245 is warranted because he has specialized expertise in federal crop insurance litigation. (*See* Ex. 2, Declaration of Jeff Todd).  The defendant disagrees, arguing that expertise in federal crop insurance does not justify rate enhancement.  The defendant also contends that if some rate enhancement is justified, the rate increase requested by the plaintiffs is excessive.

In *Pierce v. Underwood*, the United States Supreme Court addressed the "special factor" exception, stating:

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. *Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.* Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed.

487 U.S. at 572 (emphasis added).

There is no guiding precedent for recognizing representation of farmers in federal crop insurance claims as a specialized practice area warranting a rate enhancement under the EAJA. The Supreme Court identified patent law as an example of attorneys having some "distinctive knowledge or specialized skill needful for the litigation in question" in the *Pierce* opinion. In this litigation, attorneys Todd and Buettner demonstrated their special competence in understanding farming practices as well as the complexities of the Federal Crop Insurance Act, the operation of the Federal Crop Insurance Corporation, the Risk Management Agency, the Group Risk Income Protection policy and the factual context in which this dispute arose. Understanding the farm programs administered by the Secretary of Agriculture is a necessary requirement for conducting litigation of this type. Compared with the fees being paid by defendants in other fee transfer litigation before this court the enhancement requested by these two attorneys is reasonable and the government should be required to pay them.

Accordingly, it is

ORDERED that on or before October 19, 2012, the plaintiffs shall submit a revised net worth exhibit, and it is

FURTHER ORDERED upon the plaintiffs' establishment of their eligibility under the Equal Access to Justice Act, the plaintiffs' fee application will be granted, with the modification set forth above for Mr. Seserman's hourly rate.

Dated: September 21, 2012

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge